UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Craig Ninja Antonio Brewton, | ) | C/A No. 0:25-cv-1073-RMG-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Matthew C. Smith, Cathy White, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court in this case are Plaintiff's Motion for Judgment on the Pleadings (ECF No. 61), Defendants' Motion for Summary Judgment (ECF No. 66), Plaintiff's Motion for Summary Judgment (ECF No. 87), and Plaintiff's "Motion to add Defendants [and] correct violations filing 1983 [and] 1985 civil claims," which is construed as a Motion to Amend/Correct the Complaint (ECF No. 93).  Proceeding *pro se* and *in forma pauperis*, Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights against the above-named Defendants.[1]  Plaintiff is a pretrial detainee incarcerated at the Spartanburg County Detention Center ("the Detention Center").  ECF No. 1 at 3, 5.  Pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases filed under § 1983 and make recommendations to the district court.  For the reasons below, Defendants' Motion should be granted, and Plaintiff's Motions should be denied.

---

[1] Plaintiff's Complaint named the following Defendants: Sheriff Chuck Wright ("Wright"), Matthew C. Smith ("Smith"), Christopher Rojas ("Rojas"), Cathy White ("White"), the Detention Center, Spartanburg County (the "County"), and the City of Spartanburg (the "City").  ECF No. 1.  By Order dated April 29, 2025, Wright, Rojas, the Detention Center, the County, and the City were dismissed from this action.  ECF No. 22.  Defendants note that White is properly identified as "Kathy White" instead of "Cathy White."  ECF No. 66-1 at 1.

**BACKGROUND**

**Procedural History**

Plaintiff commenced this action by filing a Complaint on the standard form seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff attached to his Complaint a handwritten document containing additional allegations. ECF No. 1-2. The Court construes both documents together as the Complaint filed in this action.

On May 7, 2025, Defendants Smith and White filed a Motion to Dismiss and an Answer to the Complaint. ECF Nos. 26; 27. On May 27, 2025, Plaintiff filed a Response in Opposition to the Motion to Dismiss. ECF No. 32. On July 31, 2025, Plaintiff filed a Supplemental Response in Opposition. ECF No. 52. By Order dated August 26, 2025, Judge Gergel granted in part and denied in part the Motion to Dismiss. ECF No. 57 (adopting Report and Recommendation at ECF No. 26). That Order denied, without prejudice, Defendants Motion to Dismiss on exhaustion grounds, granted the Motion as to Plaintiff's claims against Defendants in their official capacities, and denied the Motion as to Plaintiff's claims against Defendants in their individual capacities. *Id*.

On September 29, 2025, Plaintiff filed a Motion for Judgment on the Pleadings. ECF No. 61. Defendants filed a Response in Opposition on October 13, 2025. ECF No. 63. Plaintiff filed a Reply on December 5, 2025. ECF No. 79.

On October 27, 2025, Defendants Smith and White filed a Motion for Summary Judgment. ECF Nos. 66. On October 28, 2025, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (a "*Roseboro* Order"), advising Plaintiff of the motion for summary judgment procedures and the possible consequences if he failed to respond adequately. ECF No. 68. On November 12, 2025, Plaintiff filed a Response in Opposition to the Motion for Summary Judgment. ECF No. 75. Defendants filed a Reply on November 19, 2025. ECF No. 79.

On March 6, 2026, Plaintiff filed a Motion for Summary Judgment. ECF No. 87. Defendants' Response is not due until March 20, 2026. However, the Court finds that a response is not needed at this time as they have filed a Response in Opposition to Plaintiff's Motion for Judgment on the Pleadings, which raises nearly identical arguments.[2]

**Factual Allegations[3]**

Plaintiff contends Defendant Smith engaged in excessive use of force and Wright engaged in deliberate indifference in violation of Plaintiff's constitutional rights.[4] ECF No. 1 at 5. The events giving rise to Plaintiff's claims occurred on September 19, 2022. *Id*. at 6.

According to Plaintiff, an unknown officer did not let him read a search warrant. *Id.* That officer assaulted Plaintiff by slapping his hand, intimidating him, and telling him not to reach. *Id.* Plaintiff felt scared and "ran to the highway for witnesses." *Id.* at 7. Smith then tazed Plaintiff three times and used his knee in an illegal chokehold. *Id.* Plaintiff claims Smith broke and dislocated Plaintiff's shoulder when he "roughly" arrested Plaintiff and put him in tight handcuffs. *Id.* Smith allegedly illegally searched and seized Plaintiff and touched him improperly. *Id.* White and her staff of nurses knew Plaintiff was severely injured, but he was placed in a holding cell without treatment. *Id.*

---

[2] On March 9, 2026, Defendants filed a Motion for Extension seeking an extension of time within which to file a response to Plaintiff's Motion for Summary Judgment. ECF No. 89. Because the Court finds that a response is not necessary to decide the issues pending before the Court, Defendants' Motion will be found moot by separate order.

[3] The Court does not include Plaintiff's allegations against the Defendants who have previously been dismissed.

[4] Plaintiff's Complaint also asserted claims related to an allegedly unlawful search and seizure related to Plaintiff's pending state court charges. Those claims were dismissed by Order dated April 29, 2025. ECF No. 22. Although the Court has dismissed Plaintiff's unlawful search and seizure claims, Plaintiff continues to make arguments concerning those claims as noted below.

For his injuries, Plaintiff contends he has a dislocated shoulder and a broken vertebrae in his neck from an illegal chokehold "and naked armbar hold used in UFC fighting." *Id.* at 8. Plaintiff asserts that he "bonded out" and paid for his own surgery by taking out loans. *Id.* Plaintiff alleges that he suffers bad headaches and memory loss from being tazed. *Id.* Plaintiff contends he "had a concussion a couple times" and passed out. *Id.* Plaintiff contends his back hurts when he moves and he has "bad dreams from this incident and can't sleep from nightmares and being depressed." *Id.* Plaintiff claims he had surgery on February 22, 2023. *Id.* For his relief, Plaintiff seeks money damages. *Id.*

**Plaintiff's Pending State Court Charges**

The Court takes judicial notice[5] that Plaintiff was charged with certain drug charges at case number 2022A4210205673 (indictment number 2023GS4201850) arising from the incidents in question. *See* Spartanburg County Seventh Judicial Circuit Public Index, available at https://publicindex.sccourts.org/Spartanburg/PublicIndex/PISearch.aspx (search by case number listed above) (last visited March 10, 2026). Plaintiff has also been charged with the following additional crimes, which remain pending against him in the Spartanburg County Court of General Sessions: (1) trafficking in cocaine at case number 2022A4210101970 (indictment number 2023GS4201852); (2) possession of a weapon during violent crime at case number 2022A4210101971 (indictment number 2023GS4201852A); (3) failure to stop for a blue light at case number 20232580132276 (indictment number 2024GS4201131); (4) filing a false police report of a felony violation at case number 2024A4210201433 (indictment number

---

[5] *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

2024GS4203081); and (5) filing a false police report of a felony violation at case number 2024A4210201434 (indictment number 2024GS4203082). *Id*. (search by listed case numbers).

**Plaintiff's Other Federal Court Cases**

This is one of four actions filed by Plaintiff in this Court within the span of several months, with many of the claims in the cases related to the same underlying incidents. In December 2024, Plaintiff filed an action—at case number 24-cv-7655—pursuant to § 1983 against various corrections officers at the Detention Center asserting claims of excessive force and denial of medical care. That action remains pending.

In January 2025, Plaintiff filed an action—at case number 25-cv-0226—pursuant to § 1983 against various corrections officers at the Detention Center asserting claims of excessive force and denial of medical care. Plaintiff filed a Notice of Voluntary Dismissal on January 27, 2025, and that action was closed.

In February 2025, Plaintiff filed the present action—at case number 25-cv-1073—pursuant to § 1983 against various Spartanburg County entities and officials, including Smith and White, asserting claims of unlawful arrest, false imprisonment, and excessive force arising from Plaintiff's arrest on September 19, 2022.

In August 2025, Plaintiff filed an action—at case number 25-cv-10435—pursuant to § 1983 against certain sheriff's deputies asserting claims of excessive force and denial of medical care. That action remains pending.

**STANDARD OF REVIEW**

**Liberal Construction of *Pro Se* Pleadings**

Because Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v.*

5

*Pardus*, 551 U.S. 89, 94 (2007).  However, even under this less stringent standard, the *pro se* pleading remains subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Claims under § 1983**

The Complaint is filed pursuant to § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

**Deliberate Indifference**

A pretrial detainee cannot be subject to any form of "punishment." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). As such, a pretrial detainee's claims for deliberate indifference are brought pursuant to the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* Although Plaintiff's claims are analyzed under the Fourteenth Amendment, case law interpreting the standard of deliberate indifference under the Eighth Amendment is instructive. *See Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (noting that courts "traditionally apply Eighth Amendment deliberate indifference precedents" to Fourteenth Amendment claims). "The constitutional protections guaranteed to a pretrial detainee under the Fourteenth Amendment 'are co-extensive with those provided to convicted prisoners by the Eighth Amendment.'" *Kovari v. Brevard Extraditions, LLC*, 461 F. Supp. 3d 353, 381 (W.D. Va. 2020) (citation omitted); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (noting a pretrial detainee can establish a violation under the Fourteenth Amendment

8

where "he shows deliberate indifference to serious medical needs" under cases interpreting the Eighth Amendment).

In *Short v. Hartman*, the United States Court of Appeals for the Fourth Circuit noted that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015), had abrogated the Fourth Circuit's prior precedent requiring the application of the subjective element of the Eighth Amendment test to a pretrial detainee's claims under the Fourteenth Amendment and held that a pretrial detainee's claims must be evaluated under an entirely objective standard. 87 F.4th 593, 611–12 (4th Cir. 2023). To establish this claim, a pretrial detainee must show that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short*, 87 F.4th at 611. A condition is a serious medical need if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

In holding that a pretrial detainee is no longer required to show subjective knowledge of an excessive risk of harm, the Fourth Circuit stated as follows:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was "objectively unreasonable," that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil

> recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." We go no further.
>
> To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. Negligence was not enough before, and it is not enough now.

*Short*, 87 F.4th at 611–12 (internal citations omitted).

**Excessive Use of Force**

Plaintiff's excessive force claim is governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders." *Terrell v. City of Spartanburg*, C/A No. 7:17-cv-02738-BHH-JDA, 2018 WL 4782334, at *5 (D.S.C. Sept. 12, 2018). However, "[t]he Fourth Amendment bars police officers from using *excessive* force to effectuate a seizure." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (emphasis added). "Courts evaluate a claim of excessive force based on an 'objective reasonableness' standard." *Id.* (quoting *Graham*, 490 U.S. at 399). "Courts are to carefully balance the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake." *Id.* at 884–85 (citations and internal quotation marks omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8–9 (1985)). Therefore, the three factors to analyze, established in *Graham v. Connor*, are: (1) "the severity of the crime"; (2) "whether the suspect posed an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Id.* The United States Court of Appeals for the Fourth Circuit has held that, among these *Graham* factors, the second—whether the suspect poses an immediate threat to the safety of the officers or others— is "the most important." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024). "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

"An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

necessary in a particular situation." *Id.* at 397; *see Stanton*, 25 F.4th at 233 ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment."). Ultimately, "the question of whether the officer's actions were reasonable is a question of pure law." *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022); *see Scott v. Harris*, 550 U.S. 372, 381 n.8. (2007).

## **DISCUSSION**

**The Undisputed Record Evidence**

In support of Defendant's Motion for Summary Judgment, they have filed the Affidavits of Smith (the "Smith Affidavit") (ECF No. 66-2), David Littleton (the "Littleton Affidavit") (ECF No. 66-4), and White (the "White Affidavit") (ECF No. 66-6). Attached to the Smith Affidavit are arrest warrants. ECF No. 66-3. Attached to the Littleton Affidavit are four video recordings of Smith's body worn camera ("Smith BWC") on the day of Plaintiff's arrest, submitted to the Court via a USB flash drive. ECF No. 66-5. Attached to the White Affidavit are Plaintiff's medical records filed under seal. ECF No. 66-7.

Plaintiff also attached certain documents in support of his own Motions and Responses to Defendants' Motion. Plaintiff attached three documents to his Motion for Judgment on the Pleadings: (1) photographs of Plaintiff, (2) a portion of an affidavit of Investigator J. Gilstrap, and (3) a portion of White's Incident Report. ECF No. 61 at 7–10. Plaintiff attached his own Affidavit to the Response in Opposition to Defendants' Motion. ECF No. 75-1.

The following facts are undisputed based on the record evidence. On September 19, 2022, Spartanburg County Sheriff's Office deputies, including Smith, responded to 141 Teeanna Drive in Spartanburg to assist South Carolina Department of Corrections ("DOC") officers who were serving a warrant on Marcus Barlow ("Barlow"). Smith Aff. ¶ 2. Upon arriving, Smith observed

a blue Chrysler in front of the residence and confirmed that it was registered to Barlow.  *Id*. at ¶ 3.

Smith also observed that the front door of the home was open.  *Id*.  Soon after the deputies arrived,

Plaintiff came out of the home and shut the door behind him.  *Id*. at ¶ 4.  Smith smelled marijuana

coming from inside the home and from Plaintiff.  *Id*. at ¶ 6.  Smith also observed that Plaintiff's

eyes were glassy and bloodshot.  *Id*. at ¶ 5.  Plaintiff initially refused to identify himself and denied

that anyone else was in the residence.  *Id*. at ¶ 4.  Upon questioning, Plaintiff told Smith and a

DOC officer that he had taken Barlow, the subject of the warrant, to work at Home Depot.  *Id*. at

¶ 4.  Plaintiff also admitted that he had been smoking marijuana in the car prior to deputies' arrival.

*Id*. at ¶ 6; Littleton Aff., Ex. A, Smith BWC 1.

After Plaintiff disclosed his name, Smith looked up Plaintiff's information and reviewed

his photograph and identifying tattoos.  Smith Aff. ¶ 7.  As a result, Smith confirmed that Plaintiff

was not the individual the DOC was seeking.  *Id*.  However, Smith determined that he had probable

cause to obtain a search warrant for the home based on the smell of marijuana and noises coming

from inside the home, even though Plaintiff said no one was inside.  *Id*. at ¶ 8.  Given Smith's

decision to obtain a search warrant and Plaintiff's nervous behavior, Smith decided to place

Plaintiff in investigatory detention.  *Id*. at ¶ 9.  After Plaintiff was told that he was being detained,

Plaintiff fled.  *Id*. at ¶ 10.

Smith pursued Plaintiff across Teeanna Drive, through a slightly wooded area, and across

Interstate 26 ("I-26").  Littleton Aff., Ex. A, Smith BWC 2.  During the pursuit, Smith ordered

Plaintiff to "Stop!" and "Come here!", but Plaintiff did not comply.  *Id*.  Smith caught up to

Plaintiff after Plaintiff crossed the interstate.  *Id*.  Once Smith reached Plaintiff, he told Plaintiff to

"Get on the ground or [he was] going to be tased!"  *Id*.  Plaintiff again refused to comply.  *Id*.

Plaintiff turned to face Smith, placed his hands on top of his head, and began slowly walking

backwards down the shoulder of I-26.  *Id*.  Smith issued repeated commands to Plaintiff, but Plaintiff ignored them.  *Id*.  After approximately a minute, Plaintiff stopped and began walking towards Smith.  *Id*.  At that point, Smith drew his taser and ordered Plaintiff to stop and step back.  *Id*.; Smith Aff. ¶ 12.  Smith did not deploy his taser at that time because he was concerned that Plaintiff would fall into traffic given his proximity to the lane of travel.  Smith Aff. ¶ 13.

Plaintiff then again began walking backward away from Smith, who continued instructing him to get on the ground.  Littleton Aff., Ex. A, Smith BWC 2.  Seconds later, Plaintiff stepped toward Smith, prompting Smith to raise his taser again and tell Plaintiff to stop.  *Id*.  Plaintiff then turned briefly toward the guardrail before walking into the roadway behind a tractor trailer.  *Id*.  Plaintiff crossed both lanes of travel, followed by Smith, and stopped in the median, where he again began walking backward away from Smith.  *Id*.  Plaintiff then wandered back into traffic and weaved back and forth across the lanes despite oncoming cars.  *Id*.  Smith yelled for him to get out of the road, warning that he was going to cause a wreck as cars swerved to avoid hitting him.  *Id*.  Plaintiff continued moving in and out of the lanes before running to the opposite side of the interstate.  *Id*.

When Smith reached Plaintiff on the other side of I-26, he determined that Plaintiff was far enough from the lane of travel to be safely tased.  Smith Aff. ¶ 14.  Consequently, Smith deployed the taser from a few feet away from Plaintiff.  Littleton Aff., Ex. A, Smith BWC 2.  Plaintiff immediately fell backward to the ground.  *Id*.  Smith approached and directed Plaintiff to roll over, but Plaintiff attempted to stand up.  *Id*.  Smith stunned Plaintiff with the taser twice while Plaintiff was still on the ground and trying to get up.  *Id*.  Plaintiff pulled the taser leads off and attempted to kick Smith.  *Id*.  When Smith backed away out of reach, Plaintiff stood up and started to walk away.  *Id*.  Plaintiff resumed walking backward away from Smith and backed into the grass along

the shoulder. *Id*. Smith informed Plaintiff that he was under arrest and instructed him to get on the ground. *Id*. Plaintiff again turned and began to walk away, so Smith deployed the taser again. *Id*. Plaintiff fell to the ground, and Smith grabbed one of his arms and ordered him to put his hands behind his back. *Id*. Plaintiff resisted as Smith attempted to handcuff him, but with the assistance of a passing motorist, Smith was able to secure Plaintiff in handcuffs. *Id*. Subsequently, other deputies arrived to assist Smith. *Id*.

After securing Plaintiff, Smith requested that an ambulance respond to the scene. Smith Aff. ¶ 14. Paramedics arrived and attempted to treat Plaintiff, who refused medical attention. *Id*. Because Plaintiff had been tased, and in accordance with Spartanburg County Sheriff's Office policy, Smith transported him to the emergency room at Spartanburg Regional Medical Center. Smith Aff. ¶ 14. Upon arrival, Plaintiff initially refused to get out of the patrol vehicle and enter the emergency room. Littleton Aff., Ex. A, Smith BWC 4. After a few minutes, Plaintiff agreed to go inside, complaining that his arm hurt and that he needed water. *Id*. Hospital security assisted Plaintiff into a wheelchair and escorted him to an exam room while Smith checked in with hospital staff. *Id*. Despite complaints of pain and dehydration, Plaintiff refused to allow hospital staff to provide treatment. Smith Aff. ¶ 19. Smith observed abrasions to Plaintiff's knees and puncture wounds from the taser probes. *Id*. Because Plaintiff declined treatment, hospital staff discharged him, and Smith transported Plaintiff to the Detention Center. Smith Aff. ¶¶ 19, 20.

At the Detention Center, Smith obtained arrest warrants for Resisting Arrest and Pedestrian on Highways, and Plaintiff was booked into the Detention Center. Smith Aff. ¶ 21, Ex. A. Within a few hours, Plaintiff was evaluated by Detention Center Nurse Practitioner Gerald Deel. White Aff. Ex. A. Plaintiff informed Deel that he did not want to return to the emergency room and wanted to complete the booking process. *Id*. Deel contacted Smith, who confirmed that Plaintiff

had been seen at the emergency room and refused treatment. *Id*. After reviewing Plaintiff's medical information, Deel determined that Plaintiff did not need emergency medical care and that he could proceed with the booking process. *Id*. On the following day, September 20, 2022, Deel reviewed Plaintiff's intake information and issued a prescription. *Id*. Plaintiff was released later that same day. *Id*.

**Defendants' Motion for Summary Judgment**

Defendants argue they are entitled to summary judgment because the undisputed evidence shows that Smith's use of force was objectively reasonable and did not violate Plaintiff's constitutional rights, the undisputed evidence shows White was not deliberately indifferent to Plaintiff's serious medical needs, there is no evidence to support Plaintiff's supervisory liability claim against White, both Defendants are entitled to qualified immunity, and punitive damages are not recoverable. ECF No. 66-1 at 6. The Court will address the relevant arguments in turn below.

### *Excessive Use of Force Claim against Smith*

Defendants argue the uncontradicted evidence shows that Smith used objectively reasonable force to apprehend and arrest Plaintiff. ECF No. 66-1 at 6. The Court agrees and finds that Defendants are entitled to summary judgment as to Plaintiff's excessive force claim against Smith.

In the Complaint, Plaintiff alleges that Smith used excessive force against him in violation of the Constitution. ECF No. 1 at 7. Plaintiff contends that Smith tased him three times and "had his knee on my knee [sic[6]] in an illegal chokehold with his knee or foot breaking my neck." *Id*.

---

[6] Plaintiff's reference to Smith's "knee on my knee" appears to mean Smith's "knee on my neck" based on the context of Plaintiff's other allegations.

Plaintiff also asserts that Smith "broke and dislocated my shoulder from my arm [by] roughly arresting me and placing me in very tight handcuffs." *Id*.

The Fourth Amendment "prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an arrest." *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 732 (4th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "Claims that police officers used excessive force to seize a citizen . . . are cognizable under § 1983." *Hembree v. Branch*, C/A No. 3:17-cv-485-FDW, 2018 WL 4283060, at *3 (W.D.N.C. Sept. 7, 2018) (citing *Graham*, 490 U.S. 386). "Whether an officer has used excessive force depends on 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Graham*, 490 U.S. at 396). Police officers may "exert some physical force to effectuate the order," and, unless the force is excessive, they do not violate the Fourth Amendment in doing so. *Coleman v. Calvert Cnty.*, C/A No. GJH-15-cv-920, 2016 WL 5335477, at *4 (D. Md. Sept. 22, 2016). Additionally, "[a]s a general rule, officers conducting an arrest or investigatory stop are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the arrest and/or stop." *Newman v. Green*, 198 F. Supp. 2d 664, 668 (D. Md. 2002) (citing *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995)). "A claim of excessive force by police during an arrest is properly analyzed under the Fourth Amendment by a determination of whether the officer's conduct was 'objectively reasonable.'" *El v. Wean*, C/A No. 2:16-cv-01152-DCN, 2017 WL 3910864, at *3 (D.S.C. Sept. 7, 2017) (citations omitted). The three factors to analyze, established in *Graham v. Connor* (1) "the severity of the crime"; (2) "whether the suspect posed an immediate threat to the safety of the

17

officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Graham*, 490 U.S. at 396. The United States Court of Appeals for the Fourth Circuit has held that, among these Graham factors, the second – whether the suspect poses an immediate threat to the safety of the officers or others – is "the most important." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024).

In review of the *Graham* factors and in consideration of all of the facts and circumstances surrounding Smiths' use of force, the Court makes the following observations. First, the Court will evaluate the *Graham* factors to determine whether Smith's use of force (in deploying his taser multiple times, pinning Plaintiff to the ground, and placing him in restraints) was objectively unreasonable. The first *Graham* factor—the severity of the crime—weighs in favor of Defendants or at least is neutral. This factor is not as simple as it may seem at first blush. Smith, along with other police officers, arrived at the Teeanna Drive address to serve an arrest warrant on Barlow. ECF No. 66-2 at 1. It was not until Plaintiff interacted with police that they suspected him of any crime. *Id*. Upon arriving at the address, Smith observed Plaintiff exit the house, noticed the strong odor of marijuana, and observed that Plaintiff had glassy and bloodshot eyes. *Id*. at 1–2. When questioning Plaintiff, Smith observed that Plaintiff was acting suspicious and nervous. *Id*. at 2. Smith believed he had probable cause to obtain a search warrant for the home, and he informed Plaintiff that he was being placed under an investigatory detention. *Id*. Upon being informed that he was being detained, Plaintiff fled. *Id*. During the ensuing foot chase, Plaintiff resisted arrest to the point of trying to kick and physically engage Smith as well as flee by running in and out of traffic on I-26. *Id*. at 2–3. Plaintiff was charged with various crimes, including resisting arrest and drug charges. Thus, although the severity of the crime seemed minimal at first, Plaintiff continued to escalate the situation, increasing the severity of the crimes at issue.

The second and third *Graham* factors consider whether the suspect posed an immediate threat to the safety of the officers or others and whether he was actively resisting arrest or attempting to evade arrest by flight. In this case, these two factors are intertwined. Smith's BWC is clear evidence.[7] After Plaintiff was informed that he was being placed in an investigatory detention because Smith suspected him of certain drug offenses, Plaintiff immediately fled. Smith repeatedly told Plaintiff to stop, to quit running, to get down, to get on the ground, to stop resisting, and other similar commands. In fact, Plaintiff filed a portion of Smith's Incident Report in which Smith recounted that he gave the following verbal commands, which Plaintiff ignored:

> Get down x 7
> Stop x 11
> Quit x 8
> Stop Resisting x 2
> Stay on the ground x 2
> Get off the highway x 2
> Put your hand behind your back, do it now x 2

ECF No. 74-1 at 2. Plaintiff does not contest that he fled. Instead, he argues that he "felt scared for his life [and] ran to the highway for witnesses." ECF No. 75 at 1. This argument is without merit, particularly in light of Smith's BWC. Throughout the foot chase, Smith gave Plaintiff clear warnings, and he showed the utmost patience with Plaintiff's continued defiance to his commands.

---

[7] "In cases involving inconsistent witness testimony, unchallenged video evidence allows a court to accept the facts portrayed in the video for purposes of ruling on a motion for summary judgment." *Thrower v. Kinnee*, C/A No. 0:14-cv-2791-JMC-PJG, 2015 WL 2338072, at *4 (D.S.C. Apr. 13, 2015); *see also Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that when a video "quite clearly contradicts" a version of the story so that "no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment") (citing *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape."). In this case, the video "clearly contradicts" any assertion that Plaintiff was not disobeying commands or was not resisting arrest by struggling against efforts to place him in handcuffs.

19

Plaintiff repeatedly moved towards Smith in a menacing manner before running into traffic on a busy interstate highway in the middle of the day. The BWC shows Plaintiff darting in and out of traffic while Smith yells at him to get out of the road. The BWC thus contradicts Plaintiff's statement that he fled because he felt scared and needed witnesses and instead shows Plaintiff attempting to evade capture all while endangering himself and unsuspecting motorists traveling down the interstate. Plaintiff's conduct of running into traffic demonstrates that he posed a danger to himself and others, thus weighing in favor of some use of force. Based on these reasons, the Court finds that Smith was justified in using some degree of force in subduing Plaintiff.

Further, the degree of forced used was reasonable. Smith deployed his taser in order to subdue Plaintiff. Smith did not deploy his taser until he gave numerous commands to Plaintiff and not until after Plaintiff began running in and out of traffic, posing a danger to himself and others. Smith also did not deploy his taser until Plaintiff was out of the roadway and no longer in danger of being hit by a car if incapacitated by the taser. After Smith's first deployment of his taser, Plaintiff pulled the prongs out and again attempted to flee. So, Smith deployed his taser a second time, after which he pinned Plaintiff to the ground and, with the help of a passing motorist, was able to secure Plaintiff in handcuffs. This amount of force was reasonable under the circumstances.

The Fourth Circuit has explained that a taser may be "deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 909 (4th Cir. 2016). The exigency confronting Smith when Plaintiff was darting in and out of traffic on an interstate highway constitutes an exigency creating an immediate safety risk. *See, e.g., Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 733 (4th Cir. 2013) (holding no excessive force in deploying three taser shots where the plaintiff was acting erratically and advancing toward the

20

officers, presenting an immediate threat to the officers' safety); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (concluding that an officer's use of a taser was reasonable when the suspect "used profanity, moved around and paced in agitation . . . repeatedly yelled at" the officer, and did not comply with verbal commands); *Zubrod v. Hoch*, 907 F.3d 568, 577–80 (8th Cir. 2018) (determining that the use of a taser was reasonable where "a violent suspect . . . failed to comply with reasonable orders to turn around and resisted even after multiple tasings"). "Courts have held that use of a taser gun to subdue a belligerent suspect who has repeatedly ignored police instructions is not excessive." *Davis v. Richland Cnty.*, C/A No. 4:12-cv-3429-RMG, 2014 WL 3805802, at *3 (D.S.C. July 30, 2014). That is precisely what the evidence shows in this case— Smith deployed the taser to subdue a suspect who repeatedly ignored police instructions, resisted arrest, and presented a danger to himself, the arresting officers, and the unsuspecting public. Once Plaintiff was subdued, no additional force was used, and the forced used in subduing Plaintiff was proportional and no greater than necessary to subdue Plaintiff.

Also, the Complaint appears to suggest three separate instances of unlawful application of force—(1) Smith's deployment of his taser (multiple times); (2) Smith's alleged use of his knee and/or a chokehold on Plaintiff's neck causing it to "break"; and (3) Smith's restraining of Plaintiff with handcuffs causing his shoulder to "dislocate." ECF No. 1 at 7. There is no dispute that Smith deployed the taser multiple times, pinned Plaintiff to the ground after a foot chase, and restrained Plaintiff using handcuffs, a belly chain, and leg cuffs. However, contrary to Plaintiff's cursory allegations in the Complaint, there is no evidence in the record showing that Plaintiff suffered a dislocated shoulder or any neck injury, let alone a broken neck. Although Plaintiff did complain about having pain in his arm, he declined medical treatment by EMTs at the scene of his arrest, he declined medical treatment at the emergency room immediately following his arrest, and he

declined medical treatment upon his initial arrival at the Detention Center.  In the period of time immediately following the arrest, including the period of time when Plaintiff was at the hospital, as recorded on Smith's BWC, Plaintiff showed no outward signs that he was injured in his neck or shoulder as a consequence of Smith's actions.  Plaintiff complained of being thirsty, feeling dehydrated, and needing water, but did not complain of neck pain.  Plaintiff's knees were also visibly scraped and bleeding following the encounter with Smith.  But the Complaint's cursory assertions that Smith used force to dislocate Plaintiff's shoulder and break his neck is wholly unsupported by the record evidence.  Although not specified in *Graham*, courts have found that "the extent of the plaintiff's injuries is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527-8 (4th Cir. 2003); *see also Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Pressley v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987).  There is no medical evidence before the Court regarding a severe or debilitating wound, the need for surgery, any long-term or lasting injury, or any treatment after the night of the incident other than ibuprofen. *Hendricks v. Greenville Cnty.*, C/A No. 6:24-cv-03587-JDA-WSB, 2026 WL 228887, at *7 (D.S.C. Jan. 9, 2026) (collecting cases noting that absence of injury counters against finding of excessive force), *R&R adopted by* 2026 WL 228002 (D.S.C. Jan. 28, 2026).  Further, there is no evidence that Smith used a chokehold or placed his knee or any other part of his body onto Plaintiff's neck during the arrest.

Therefore, based upon the video BWC and undisputed evidence, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim against Smith.

### Deliberate Indifference Claim against White

Defendants also argue that there is no evidence that White was deliberately indifferent to Plaintiff's serious medical needs.  ECF No. 66-1 at 11–12.  The Complaint alleges that Plaintiff suffered a dislocated shoulder and broken vertebrae in his neck and that he paid for his own surgery

after he "bonded out" of jail. ECF No. 1 at 8. Plaintiff asserts he suffers from bad headaches and memory loss from being tased and had a "concussion a couple of times being tased and passing out." *Id*. Plaintiff contends he had surgery on February 22, 2023. *Id*. The only allegation against White is that she "and her staff of nurses knew that I was severely injured and I was placed in a holding cell." *Id*. at 7.

As noted, to state a medical deliberate indifference claim under the Fourteenth Amendment, a pretrial detainee must show the following:

> (1) the detainee suffered from a medical condition or injury that posed a substantial risk of serious harm;
>
> (2) the defendant "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed";
>
> (3) the defendant knew or should have known that the detainee had the condition and that the defendant's action/inaction posed an "unjustifiably high risk of harm"; and
>
> (4) the detainee was harmed as a result.

*Short*, 87 F.4th at 611–12. Under this standard, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id*. "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. (quoting *Farmer*, 511 U.S. at 836).

"Objectively, the inmate's medical condition must be 'serious' — 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). "[M]ere delay" in medical treatment, without more, is not deliberate inference to a serious medical need. *Moskos v.*

23

*Hardee*, 24 F. 4th 289, 298 (4th Cir. 2022).  Differences of opinion between an inmate patient and medical staff over the course of medical treatment are insufficient to state a claim of deliberate indifference.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation).  "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Short*, 87 F.4th at 611–12 ("[I]t is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee.") (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015); *Brawner*, 14 F.4th at 596; *Gordon*, 888 F.3d at 1125; *Miranda*, 900 F.3d at 353–54).

There is no evidence in the record that Plaintiff had an objectively serious medical condition or that White, or any other individual, denied Plaintiff treatment or was deliberately indifferent to a serious medical condition.  Plaintiff was arrested on September 19, 2022, and was tased three times by Smith, pinned to the ground, and handcuffed.  ECF No. 1 at 6–7.  By Plaintiff's own admission, he "bonded out" the next day.  *Id*. at 8.  Plaintiff claims to have had surgery on February 22, 2023, which he paid for himself.  *Id*.  However, Plaintiff does not allege facts, nor provide any medical evidence or other documentation showing that the surgery in February 2023 was related to any injury sustained at the time of the arrest in September 2022.  Further, Plaintiff has not identified any evidence in the record showing that he had a serious medical condition that was obvious such that anyone, including White, should have known he needed medical attention.  On the other hand, the evidence shows that Plaintiff was evaluated by EMTs at the scene of his arrest shortly after he was tased and pinned to the ground, but Plaintiff declined treatment.  ECF No. 66-2 at 3.  Plaintiff was then taken to the hospital to be evaluated, but he again declined

24

treatment. *Id*. Finally, Plaintiff was evaluated during booking at the Detention Center, but again he declined treatment other than being prescribed ibuprofen. ECF No. 73.

Defendants have filed Plaintiff's medical records, under seal, from his brief incarceration at the Detention Center from September 19 to September 20, 2022. ECF No. 73 (Plaintiff's medical records filed under seal). Those medical records consist of a single page document with two medical notes, one dated September 19, 2022, at 2:53 p.m. and the other dated September 20, 2022, at 10:30 a.m. *Id*. Both notes are authored by Gerald Deel, a nurse practitioner. *Id*. The first note indicates Plaintiff was seen in booking for an arm injury and had scrapes on both knees. *Id*. Plaintiff was noted to have "minimal ROM of right shoulder and on paplatation [sic] he does have some asymmetrical placement." *Id*. The note then explains as follows:

> [Plaintiff] does not want to go to ER. He states that he wants to complete his booking and does show visible pain. I recommend that he go to ER because I am not given report that he was seen.

*Id*. Booking then called the arresting officer who stated that Plaintiff was sent to the ER before being taken to the Detention Center. *Id*. The note indicates that booking then reviewed Plaintiff's ER records which showed Plaintiff "was seen by triage nurse and refused vitals and treatment and was released after 15 minutes to police custody." *Id*. The note concluded that Plaintiff's injury appeared to be "nonemergent," and Deel discussed with Plaintiff that he could return to the ER after completing booking if needed. *Id*. The second note made the following morning explained that Deel reviewed Plaintiff's intake materials and shoulder concerns, prescribed ibuprofen, noted "no additional interventions are required at this time," and explained that Plaintiff would be re-assessed in three days. *Id*. Of course, Plaintiff was released on bond that same day and no further assessment occurred at the Detention Center.

Even construing all the record evidence in a light favorable to Plaintiff, there is insufficient evidence to establish a claim for deliberate indifference under the Fourteenth Amendment. Plaintiff received evaluation and treatment for his complaints of pain. However, Plaintiff declined further treatment or evaluation beyond that which he received immediately following his arrest and for the two-day period he was at the Detention Center. "The fact that Plaintiff would prefer a different course of treatment is simply irrelevant. A mere disagreement between an inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist." *Roberts v. Rubenstein*, C/A No. 5:14-cv-28, 2015 WL 1246618, at *8 (N.D.W. Va. Jan. 30, 2015), *R&R adopted by* 2015 WL 1246047 (N.D.W. Va. Mar. 18, 2015). "Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems." *Pevia v. Getachew*, C/A No. ELH-21-cv-751, 2022 WL 4080298, at *17 (D. Md. Sept. 2, 2022). "The right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977). Plaintiff has not alleged facts or pointed to any evidence showing that White—or any other individual— acted or failed to act in the face of an unjustifiably high risk of harm that was either known or so obvious that it should be known. Accordingly, Plaintiff has failed to show that Defendants were deliberately indifferent to a serious medical need.

### *Supervisory Liability as to White*

Plaintiff appears to have named White because of her supervisory role over the other medical personnel at the Detention Center. ECF No. 1 at 7 (alleging that White "and her staff of nurses knew that [Plaintiff] was severely injured and [Plaintiff] was placed in a holding cell"). The

Complaint contains no specific allegations about White's personal involvement in Plaintiff's care and treatment, or lack thereof. Nevertheless, even construing Plaintiff's claims against White on the theory of supervisory liability, the claims are without merit.

Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in an individual capacity only for his or her personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[ ]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).

Plaintiff has failed to establish a § 1983 claim against White based on a theory of supervisory liability because Plaintiff has failed to allege facts or produce evidence showing that White had actual or constructive knowledge of her subordinates engaging in pervasive or widespread conduct that posed a risk of injury to inmates like Plaintiff. Plaintiff does not allege that White had any personal interactions with Plaintiff and only generally asserts that White and her staff placed Plaintiff in a cell despite knowing he was severely injured. However, Plaintiff has not produced or identified any evidence showing that White had any knowledge of Plaintiff or his alleged injuries or that White was involved in Plaintiff's medical treatment.

Further, because Plaintiff has failed to establish an underlying constitutional violation for deliberate indifference by White or any of her subordinates, he cannot establish a supervisory liability claim. *See Doe v. Rosa*, C/A No. 2:14-cv-4396-RMG, 2016 WL 7496162, at \*4 (D.S.C. Feb. 8, 2016) ("A supervisory liability claim is intimately linked to and derivative of the underlying constitutional violation of a subordinate employee. In the absence of unconstitutional conduct by a subordinate, there can be no supervisory liability claim."), *aff'd*, 664 F. App'x 301 (4th Cir. 2016). Accordingly, Plaintiff's claim for supervisory liability against White is without merit and subject to dismissal. *See Oneal v. Fenner*, C/A No. 6:24-cv-6284-DCC-WSB, 2024 WL 5514974, at \*3–4 (D.S.C. Dec. 5, 2024), *R&R adopted by* 2025 WL 1080932 (D.S.C. Apr. 10, 2025).

### *Qualified Immunity*

Defendants also argue that they are both entitled to qualified immunity. ECF No. 66-1 at 12–14. Qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quotations and brackets omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743. In this case, Plaintiff has not established a constitutional violation under the Fourteenth Amendment, nor has he established that every reasonable official would have understood that Defendants' actions violated a constitutional right. Defendants are therefore both entitled to qualified immunity.

28

### *Younger Abstention*

Finally, the Court notes that, to the extent this action is an attempt by Plaintiff to have this Court interfere with the pending state court proceedings, any such claims are without merit. Plaintiff has filed numerous Motions in this case essentially asking this Court to intervene in Plaintiff's pending state court criminal cases, and he appears to argue the Court should do so in his own dispositive Motions and responses to Defendants' Motion for Summary Judgment. For example, in an "Affidavit" attached to Plaintiff's Response in Opposition to Defendants' Motion, Plaintiff asserts as follows:

> By law I to be release because on the arrest warrant my name is spelled Criag Antonio Brewton. That is not how my name is spelled, the correct way to spell my name is Craig Ninja Antonio Brewton. The arrest warrant does not have the correct spelled name to arrest, detain, or place a[n] indictment. So all charges need to be dismissed . . .

ECF No. 75-1. That Affidavit also contains averments concerning the arrest and search warrants related to Plaintiff's underlying criminal proceedings as well as Plaintiff's contention that the evidence seized is subject to exclusion under the fruit of the poisonous tree doctrine. *Id*. However, the Affidavit does not contain any averments related to the issues being litigated in this case— Plaintiff's excessive force claim against Smith and Plaintiff's deliberate indifference claim against White. Indeed, the majority of Plaintiff's documents pertain to the arguments that he is being unlawfully imprisoned and/or prosecuted. *See, e.g.,* ECF Nos. 61 at 2–4 (Plaintiff's Motion for Judgment on the Pleadings seeking dismissal of his pending charges and presenting numerous arguments regarding the pending criminal proceedings and underlying warrants); 74 (Plaintiff's Motion to Suppress, seeking to suppress evidence from being admitted in his underlying state court criminal proceedings); 75 at 2–6 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment presenting numerous arguments related to Plaintiff's underlying state court

criminal proceedings and arguing evidence should be suppressed and Plaintiff should be released from custody and charges dismissed); 81 (Plaintiff's Motion to Exclude making similar arguments); 85 (Plaintiff's Motion for Fruit of Poisonous Tree making similar arguments); 87 (Plaintiff's Motion for Summary Judgment making similar arguments).

However, this Court is not permitted to consider such arguments or grant Plaintiff's requested relief—such as excluding evidence, dismissing charges, etc.—under the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). Granting Plaintiff's requested relief would require this Court to interfere with or enjoin a pending state court criminal proceeding against Plaintiff. Because a federal court may not award relief that would affect pending state proceedings absent extraordinary circumstances, this Court should abstain from interfering with the state court proceedings.

In *Younger*, the Supreme Court of the United States of America held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996) (internal quotation marks omitted). The *Younger* Court noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43–44; *see Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (explaining the circumstances when *Younger* abstention is appropriate).

From *Younger* and its progeny, the Fourth Circuit has culled the following test to determine when abstention is appropriate: "[1] there are ongoing state judicial proceedings; [2] the proceedings implicate important state interests; and [3] there is an adequate opportunity to raise federal claims in the state proceedings." *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994) (citation omitted). Plaintiff is involved in ongoing

30

state criminal proceedings related to the claims at issue in this case, and Plaintiff asks this Court to award relief—i.e., suppress evidence—for alleged constitutional violations; thus, the first element is satisfied. The second element is satisfied because the Supreme Court has explained "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). The third element is also satisfied, as the Supreme Court has noted "that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Gilliam*, 75 F.3d at 903 (citation omitted).

A ruling in Plaintiff's favor in this case—as to any claims premised on his underlying pending criminal proceedings—would call into question the validity of the state court criminal proceedings against him and would significantly interfere with those ongoing state proceedings. *See Younger*, 401 U.S. at 43–45; *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) ("[F]ederal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'") (citation omitted); *Washington v. Tilton*, C/A No. 2:10-cv-997-HFF-RSC, 2010 WL 2084383, at *1 (D.S.C. May 19, 2010). Plaintiff is able to challenge the evidence against him in the state court proceedings. As such, to the extent any of Plaintiff's claims are premised on his contention that the Court should interfere with the pending state court criminal proceedings, all such claims are without merit and subject to dismissal.

**Plaintiff's Motions for Summary Judgment**

Plaintiff has filed two separate dispositive Motions—one styled as a Motion for Judgment on the Pleadings (ECF No. 61) ("Plaintiff's First Motion") and one styled as a Motion for Summary Judgment (ECF No. 87) ("Plaintiff's Second Motion"). Plaintiff's First Motion, although captioned as one for Judgment on the Pleadings, also states it is "converting over to Summary Judgment," which the Court understands Plaintiff to mean that the First Motion is seeking summary judgment under Rule 56.[8] ECF No. 61. Therefore, and given the current posture of this action, the Court applies the summary judgment standard in evaluating Plaintiff's First Motion. ECF No. 61. Plaintiff's Second Motion, which was entered on March 6, 2026, was filed long after the dispositive motions deadline set by the Court for October 27, 2025. ECF No. 58. Nevertheless, despite the untimeliness of the filing, the Court addresses the arguments raised in the Plaintiff's Second Motion. The arguments presented in both of Plaintiff's Motions are without merit and they should both be denied.

### Plaintiff's First Motion (ECF No. 61)

Plaintiff's First Motion seeks judgment in his favor because, as Plaintiff argues, he has demonstrated a constitutional violation. ECF No. 61 at 1. Plaintiff asserts that his "case involves corruption, illegal acts, injuries, [and] also a former Sheriff and his illegal tyrants." *Id*. Plaintiff identifies "two facts" that show he is entitled to relief as a matter of law. *Id*. First, Plaintiff asserts that he has demonstrated that he was subjected to "assault [and] battery with significant severe

---

[8] Defendants' Response in Opposition to Plaintiff's First Motion argues that it is "procedurally improper and substantively without merit and should be denied." ECF No. 63 at 2. Defendants argued—at that time—that the "only pleadings properly before the Court are Plaintiff's Complaint and Defendant's Answer" and that, although "Plaintiff attempts to incorporate various documents and materials outside of the pleadings, those matters are not properly considered on a Rule 12(c) motion and do not alter the analysis." *Id*. Although Plaintiff refers to the First Motion as one for Judgment on the Pleadings, the Court construes it as one seeking summary judgment.

32

injuries" in violation of his constitutional rights. *Id*. Plaintiff claims this assertion is supported by the affidavits from four inmates—Dennis E. Drummond, Nathan Daniel Pritchard, Tikita Foster, and Fidel Aguirre Jr.—who all witnessed Plaintiff being incarcerated while injured. *Id*. Plaintiff requests a court date for a trial so that he can present his evidence. *Id*. Second, Plaintiff asserts that Defendants are not entitled to immunity. *Id*. at 2. Plaintiff contends that he was illegally searched and seized without a warrant. *Id*. Plaintiff contends that White and her staff knew he was injured but tried to cover it up. *Id*. Plaintiff repeats many of these same assertions as well as the allegations from the original Complaint. *Id*. at 2–5.

Plaintiff did not attach the affidavits of other inmates he referenced. However, Plaintiff attached the following three documents to the First Motion: (1) photographs of Plaintiff, (2) a portion of an affidavit of Investigator J. Gilstrap, and (3) a portion of Smith's Incident Report. ECF No. 61 at 6–10. The photographs, dated September 19, 2022, depict Plaintiff sitting in a wheelchair, while handcuffed, with scrapes on his knees. *Id*. at 8. Gilstrap's Affidavit recounts the events of September 19, 2022, consistent with the Affidavits summarized above. *Id*. at 8. Smith's Incident Report also recounts the events of September 19, 2022, and provides the following narrative regarding Plaintiff's medical treatment:

> I requested EMS for [Plaintiff] due to him complaining of having trouble breathing. I removed the four taser prongs from [Plaintiff's] left shoulder and waist area without any issues. I later placed my spent cartridges in evidence and downloaded my taser. When EMS arrived [Plaintiff] did not wish to have them evaluate him. I then transported him to [the hospital] per our policy for the taser exposure. When I arrived at the hospital [Plaintiff] refused to get out of my patrol car at first. I was able to get him in the emergency room but he would not speak to Dr. Ellis. The only complaint he had was of shoulder pain and dehydration but he refused to let hospital staff treat him. Deputy Ingle met us at the hospital and took pictures of craig. The only visible injuries I observed were abrasions to his knees from falling on the asphalt and the punctures the taser

33

> leads left behind. They gave me discharge paperwork and I transported [Plaintiff] to the Detention Center without incident.

*Id*. at 9.

Plaintiff's cursory arguments and submitted evidence are insufficient to either demonstrate that Plaintiff is entitled to summary judgment or create a dispute of any material fact. As to Plaintiff's exhibits, he does not explain how the submitted photographs support either that Smith engaged in excessive use of force or that White was deliberately indifferent. Indeed, if anything, the photographs corroborate that Plaintiff received treatment after his arrest and, other than his scraped knees, did not appear to have any visible injuries. Likewise, Gilstrap's Affidavit and Smith's Incident Report corroborate Defendants' evidence and arguments, and Plaintiff fails to explain how either of those documents support his claims in this case.

### *Plaintiff's Second Motion (ECF No. 87)*

Plaintiff's Second Motion seeks summary judgment arguing he has established a constitutional violation entitling him to relief. ECF No. 87. Plaintiff's Second Motion presents similar arguments to those presented in the First Motion. For example, Plaintiff asserts that "[t]his case involves ongoing corruption, illegal search, illegal seizure, due process rights violated, excessive force, deliberate indifference to my serious medical needs, injuries, [and] also a former sheriff and his illegal squad of tyrants violating my civil rights." *Id*. at 1. Plaintiff again points to "two facts" that show he is entitled to relief: (1) Plaintiff has been subjected to assault and battery depriving him of his constitutional rights and (2) Defendants are not entitled to immunity. *Id*. Plaintiff asserts that these "facts" are supported by witness affidavits from more than a dozen inmates, listed by name, who Plaintiff claims "witnessed me incarcerated for these events." *Id*. However, Plaintiff has not provided any witness statements or affidavits from any of these named

34

inmates. Plaintiff presents numerous assertions and arguments related to his underlying state court criminal proceedings. *Id*. at 1–3.

As support for the Second Motion, Plaintiff attaches a single document—one page of his medical records. *Id*. at 4. That document lists an "Encounter Date" of October 18, 2023—which is over a year after the events complained of in this action. *Id*. That document lists as "Medications Ordered Today" acetaminophen tablet, 1,000 mg. *Id*. The problems addressed are indicated as "Acute pain of right shoulder; acute illness or injury" and provides the following narrative for the "Medical Decision Making":

> 34-year-old man brought in for medical clearance by the police after he was arrested today. Apparently there was a bit of a scuffle as he was resisting arrest and was brought in in handcuffs complaining about pain in his shoulders primarily. Does have a history of right rotator cuff repair so I obtained plain film images of his shoulders. There is evidence of chronic impaction fracture as well as previous surgical repair but no acute fractures or dislocations. I do not think the patient requires additional imaging studies at this time. He is awake and alert, no signs of head injury or deficits. Patient will be released to police custody. I discussed with patient that if he had persistent discomfort in that shoulder after they released him from his cuffs that he should foll-up with his orthopedic surgeon to make sure there [has] not been a new injury from today's events.

*Id*. Plaintiff asserts that he has attached this single-page medical documents as "proof of my injuries [and] surgery." *Id*. at 3.

This single piece of evidence is insufficient to show that Plaintiff is entitled to summary judgment for the following reasons. First, the date of the encounter (October 18, 2023) is over a year after the events giving rise to Plaintiff's claims (September 19, 2022). Plaintiff does not explain this discrepancy or how a medical encounter in October 2023 has any relevance on his claims arising in September 2022. Further, even though that document refers to "evidence of chronic impaction fracture as well as previous surgical repair," there is no indication in that

document, nor any other documents in the record, nor any argument presented by Plaintiff, showing that the "chronic impaction fraction" or "previous surgical repair" had anything to do with the events of September 19, 2022.

Neither of Plaintiff's Motions demonstrate that he is entitled to judgment as a matter of law. Likewise, neither of Plaintiff's Motions, his Responses to Defendants' Motions, or Plaintiff's proffered evidence establish a genuine dispute as to any material fact such that Defendants are not entitled to summary judgment. For all these reasons, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 61) and Motion for Summary Judgment (ECF No. 61) should both be denied.

**Plaintiff's Motion to Amend**

Plaintiff filed a Motion in which he seeks leave to file an amended complaint. ECF No. 93. Plaintiff's Motion explains that he is seeking to add the following Defendants: Judge Mark Hayes II ("Judge Hayes"), Christopher Grubbs ("Grubbs"), Jenniffer Wells ("Wells"), the County, Wright, the City, and Rojas. *Id*. at 1. Plaintiff contends these individuals and entities "conspired to this case because of the Defendants acts of misconduct" to violate Plaintiff's constitutional rights including claims related to excessive use of force, illegal search and seizure, due process violations, equal protection violations, fast and speedy trial violations, right to counsel, ineffective assistance of counsel, and deliberated indifference. *Id*.

Plaintiff has filed a proposed Amended Complaint, which is comprised of five hand-written pages. ECF No. 93-1. The proposed Amended Complaint presents allegations similar to those presented in the original Complaint, as summarized above, as well as conclusory assertions against the "new" Defendants in line with the summary provided in the Motion as described above. *Id*. Plaintiff also presents arguments and allegations similar to those asserted in his other pending cases in this Court. *Id*.

36

Plaintiff's Motion should be denied. As an initial matter, Plaintiff's Motion fails to meet the liberal standard for amendment under Rule 15 of the Federal Rules of Civil Procedure. The Fourth Circuit has explained that "undue delay 'accompanied by futility or prejudice to the non-movant' is 'a sufficient reason' for denying leave to amend under Rule 15(a)." *Naden v. Saga Software, Inc.*, 11 F. App'x 381, 382 (4th Cir. 2001) (quoting *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross,* 101 F.3d 1005, 1010 (4th Cir. 1996)). Here, there is undue delay and prejudice to Defendants coupled with futility (as discussed below). Plaintiff's Motion was filed after the close of discovery and after both parties had filed and briefed their summary judgment motions.

Next, the Court notes that Plaintiff's Motion is an improper attempt to add Defendants that have already been dismissed from this action. Plaintiff's Complaint named the following Defendants: Wright, Rojas, the Detention Center, the County, and the City. ECF No. 1. By Order dated April 29, 2025, Defendants Wright, Rojas, the Detention Center, the County, and the City were all dismissed from this action. ECF No. 22 (adopting the Report and Recommendation at ECF No. 16). Plaintiff's attempt at this time to add these same dismissed Defendants back into the case is without merit for the reasons the Court already dismissed them, as summarized below. *See Brewton v. Wright*, C/A No. 0:25-cv-1073-RMG, 2025 WL 1232495, at *2 (D.S.C. Apr. 29, 2025) (dismissing Wright, Rojas, the Detention Center, the County, and the City from this action). The proposed Amended Complaint fails to establish a claim against the County because Plaintiff has not plausibly alleged any custom or practice of the County which relates to his claims of deliberate indifference or excessive force. *Id*. The proposed Amended Complaint fails to establish a claim against the City because Plaintiff fails to identify any City employee involved in the incidents that give rise to his claims. *Id.* (summarily dismissing the City "because Plaintiff's

37

complaint fails to identify any City employee involved in the incidents that give rise to his claims"). The proposed Amended Complaint fails to establish a claim against the Detention Center because it is not a "person" subject to suit under 42 U.S.C. § 1983. *Id.* The proposed Amended Complaint fails to establish a claim against Rojas because Plaintiff cannot assert a claim on behalf of the violation of another person's constitutional rights. *Id.* The proposed Amended Complaint fails to establish a claim against Wright because Plaintiff's factual allegations fail to set forth a plausible claim against him individually or on the basis of supervisory liability. *Id.*; *see also Brewton v. Branson*, C/A No. 7:25-cv-10435-RMG, 2025 WL 2911016, at *1 (D.S.C. Oct. 14, 2025). Thus, for the same reasons this Court has already determined these Defendants were subject to dismissal based on the allegations in the original Complaint, Plaintiff's claims against them also fail based on the allegations in the Amended Complaint. Accordingly, amendment would be futile as the Court previously dismissed these same Defendants and/or they are entitled to immunity or are not proper parties. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards.").

The proposed Amended Complaint also improperly attempts to name certain "new" Defendants that were not identified in the original Complaint. However, Plaintiff's purported claims against these new Defendants fail because they are either immune from suit or are not persons subject to suit for the reasons below. Thus, amendment would be futile. The proposed Amended Complaint fails to establish a claim against Judge Hayes because he is entitled to absolute immunity. *See also Mireless v. Waco*, 502 U.S. 9 (1991) (explaining state judges are immune from liability for acts committed while presiding over their court). Plaintiff has attempted to sue Judge Hayes in his other pending actions in this Court over the same allegations presented

in the proposed Amended Complaint, but this Court has explained "Judge Hayes is entitled to absolute immunity" based on the allegations presented. *Brewton v. Branson*, C/A No. 7:25-cv-10435-RMG-WSB, 2025 WL 3149796, at *5 (D.S.C. Sept. 17, 2025), *R&R adopted by* 2025 WL 2911016 (D.S.C. Oct. 14, 2025).

The proposed Amended Complaint also attempts to name as new Defendants Plaintiff's present and/or former defense counsel, Wells and Grubbs. ECF No. 93-1 at 4. Plaintiff's attorneys are not proper parties as they are not state actors. To state a § 1983 claim, Plaintiff must allege that he was deprived of a constitutional right by a person acting under the color of state law. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Plaintiff has not alleged facts showing that his attorneys—Wells and Grubbs—are state actors acting under color of law. *Martin v. Brackett*, C/A No. 9:09-cv-792-RBH, 2009 WL 3836123, at *1 (D.S.C. Nov. 13, 2009) ("Attorneys for criminal defendants generally do not act under color of state law when performing traditional functions as counsel.").

"[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317 (1981); *see also Hall v. Quillen*, 631 F.2d 1154, 1156 (4th Cir. 1980) (concluding a court-appointed attorney was entitled to dismissal of the plaintiff's § 1983 claim against him for want of state action). Plaintiff has not made allegations to plausibly show that Wells and Grubbs exceeded the "traditional functions as counsel." *Polk Cnty.*, 454 U.S. at 325; *see also Trexler v. Giese*, C/A No. 3:09-cv-144-CMC-PJG, 2010 WL 104599, at *3 (D.S.C. Jan. 7, 2010) (finding attorney was entitled to summary dismissal in § 1983 action where attorney's representation in the state criminal case fell "squarely within the parameters of his legal representation" although the plaintiff was unhappy with the manner in which the attorney

represented her). Accordingly, Plaintiff cannot assert claims against Wells and Grubbs as they are not proper parties in this § 1983 action. *See Curry v. South Carolina*, 518 F. Supp. 2d 661, 667 (D.S.C. 2007) (explaining public defenders are not state actors under § 1983 and thus entitled to dismissal). Plaintiff's proposed amendment would thus be futile.

Finally, Plaintiff asserts "new" claims that are essentially asking this Court to intervene in Plaintiff's pending state court criminal cases, which is not permitted under the *Younger* abstention doctrine, as discussed in detail above. Plaintiff presents numerous allegations and arguments regarding the pending state court criminal charges against him and alleged violations of his rights pertaining to those state court proceedings. Granting Plaintiff's requested relief would require this Court to interfere with or enjoin a pending state court criminal proceeding against Plaintiff. Because a federal court may not award relief that would affect pending state proceedings absent extraordinary circumstances, this Court should abstain from interfering with the state court proceedings. Indeed, the Court has already addressed Plaintiff's allegations regarding the purported violations of his rights in his pending state court proceedings and noted such claims are not proper in light of *Younger*. *See Brewton v. Branson*, C/A No. 7:25-cv-10435-RMG-WSB, 2025 WL 3906497, at *4 (D.S.C. Nov. 20, 2025), *R&R adopted by* 2025 WL 3628586 (D.S.C. Dec. 15, 2025). Plaintiff is able to challenge the evidence against him in the state court proceedings. As such, the Plaintiff's Motion to Amend/Correct the Complaint to add new claims related to his ongoing state court criminal proceedings should be denied as futile because the Court should abstain under *Younger* from considering such claims.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (ECF No. 66) be **GRANTED**, Plaintiff's Motion for Judgment on the

Pleadings (ECF No. 61) be **DENIED**, Plaintiff's Motion for Summary Judgment (ECF No. 87) be

**DENIED**, and Plaintiff's Motion to Amend/Correct (ECF No. 93) be **DENIED**.

    **IT IS SO RECOMMENDED**.

s/William S. Brown
United States Magistrate Judge

March 12, 2026
Greenville, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).