**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | |
|---|---|
| Craig Ninja Antonio Brewton, | Case No. 0:25-cv-01073-RMG |
| Plaintiff, | |
| v. | **ORDER** |
| Matthew C. Smith and Cathy White, | |
| Defendants. | |

This matter is before the Court upon the Report and Recommendation ("R & R") of the Magistrate Judge, recommending that Plaintiff's motions for summary judgment and to add defendants to the Complaint (Dkt. Nos. 61, 87, 93) be denied and Defendants' motion for summary judgment (Dkt. No. 66) be granted. (Dkt. No. 94). The parties were advised that they had 14 days to file written objections to the R & R and a failure to timely file objections would result in clear error review and waiver of the right to appeal the district court's order. (*Id*. at 42). No party filed objections to the R & R.

## I.  Background

Plaintiff, a pretrial detainee at the Spartanburg County Detention Center acting *pro se*, filed this 42 U.S.C. § 1983 action against Defendant Mathew C. Smith, alleging excessive use of force, and against Defendant Cathy Wright,[1] alleging deliberate indifference to a serious medical

---

[1] Plaintiff's complaint asserts a claim against "Cathy White." (Dkt. No. 1). Defendant White submitted an affidavit stating her name is "Kathy White" and that she serves as the Medical Administrator for the Spartanburg County Detention Center. (Dkt. No. 66-6). The Court finds that Plaintiff's claim is against Defendant Kathy White and that she was misnamed in the Complaint as "Cathy White."

condition. (Dkt. No. 1).[2]  Plaintiff alleges that Defendant Smith violated his constitutional rights by tazing him three times and using an "illegal chokehold with his knee or foot[,]" breaking Plaintiff's neck and dislocating his shoulder. (*Id*. at 7).  Plaintiff further alleges that Defendant White "and her staff of nurses knew that [Plaintiff] was severely injured" but provided no care. (*Id*.).

The record includes sworn affidavits from Defendants Smith and White, videos from Defendant Smith's body camera, and medical records from the Spartanburg County Detention Center. (Dkt. Nos. 66-2, 66-3, 66-4, 66-5, 66-6, 66-7, 73).  In support of his motion, Plaintiff submitted photographs, portions of an investigator's report and Defendant Smith's incident report, and his own affidavit. (Dkt. Nos. 61 at 7-10, 75-1).

The undisputed record establishes the following: Defendant Smith, a Spartanburg County deputy sheriff, encountered Plaintiff on September 19, 2022, when he went to a residence to serve a warrant on Marcus Barlow.  Shortly after Defendant Smith arrived, Plaintiff exited Barlow's residence.  Defendant Smith detected the odor of marijuana coming from both Plaintiff and inside the residence.  Plaintiff's eyes were glassy and bloodshot, and he appeared to be very nervous. Plaintiff denied anyone was in the residence, but Defendant Smith heard noises coming from inside the home.  Based on these circumstances, Defendant Smith determined that he had probable cause to seek a search warrant and placed Plaintiff in investigatory detention.  When Plaintiff was informed that he was being detained, he fled on foot.  (Dkt. No. 66-2).

---

[2] By earlier order, the Court adopted the Report and Recommendation of the Magistrate Judge, recommending summarily dismissing Plaintiff's claims against Defendants Sheriff Chuck Wright, Christopher Rojas, Spartanburg County Detention Center, Spartanburg County, and City of Spartanburg. (Dkt. No. 22).

Defendant Smith pursued Plaintiff through the surrounding area and then onto Interstate 26. Defendant Smith repeatedly ordered Plaintiff to stop but he refused to comply. Plaintiff began walking backwards, away from Defendant Smith, along the shoulder of I-26. He then walked towards Defendant Smith, who drew his taser. Defendant Smith did not deploy the taser because he feared Plaintiff would fall into traffic. Plaintiff thereafter crossed the interstate and weaved back and forth across the lanes, despite oncoming traffic. (*Id*.).

Defendant Smith waited until Plaintiff was sufficiently away from the traffic before safely deploying his taser. Plaintiff fell to the ground after being tased, but he then attempted to get up, despite Defendant Smith's repeated instructions to remain down. Defendant Smith tased Plaintiff twice as Plaintiff continued to make efforts to stand up. Defendant Smith then attempted to handcuff Plaintiff, but he resisted. With the assistance of a passing motorist, Defendant Smith was able finally to secure Plaintiff's handcuffs. Other deputies arrived thereafter to assist. (*Id*.).

Paramedics were called to the scene to treat Plaintiff, but he refused medical treatment. In accordance with department policy regarding use of a taser, Plaintiff was transported to the local emergency room. Plaintiff complained of dehydration and arm pain, but he refused medical treatment by the hospital staff. Following his arrest for resisting arrest and a pedestrian on the highway violation, Plaintiff was then taken to the detention center for booking. A nurse practitioner at the detention center, Gerald Deel, evaluated Plaintiff. Plaintiff told Deel that he had been running from deputies and had scraped both knees. Plaintiff refused efforts to take Plaintiff's vital signs and provide treatment. Deel documented that Plaintiff's condition appeared "nonemergent." (Dkt. No. 73 at 2). The following day Deel prescribed Ibuprofen and determined that no further interventions were required. (*Id*.). Later that same day, Plaintiff posted bail and was discharged from the detention center.

The Magistrate Judge, relying upon the record evidence, including Defendant Smith's body camera videos, carefully described Plaintiff fleeing from Defendant Smith, weaving through traffic on the interstate, and repeatedly refusing to follow the commands. The Magistrate Judge found that Defendant Smith "showed the utmost patience with Plaintiff's continued defiance of his commands" and the body camera videos showed "Plaintiff darting in and out of traffic while Smith yells at him to get out of the road." (Dkt. No. 94 at 20). The Magistrate Judge concluded that the degree of force used was reasonable and necessary to subdue Plaintiff and that Defendant Smith did not tase Plaintiff until after he defied numerous commands and created a danger to himself and others by "running in and out of traffic." (*Id*.).

The Magistrate Judge further found that there was no evidence to support Plaintiff's claims of any serious injury resulting from being tased and arrested. The Magistrate Judge found that there was no evidence to support Plaintiff's claim of a dislocated shoulder or broken neck and that he repeatedly declined treatment at the scene, at the emergency room, and at the detention center. Moreover, Plaintiff did not exhibit signs of any injury to his shoulder or neck as a consequence of his encounter with Defendant Smith. (*Id*. at 22). The Magistrate Judge therefore recommended granting Defendant Smith's motion for summary judgment regarding the use of excessive force. (*Id*.).

The Magistrate Judge reached a similar conclusion regarding the claim of deliberate indifference against Defendant White. After a careful review of the record in this matter, the Magistrate Judge found that "[t]here is no evidence in the record that Plaintiff had an objectively serious medical condition or that White, or any other individual, denied Plaintiff treatment or was deliberately indifferent to a serious medical condition." (*Id.* at 24). The record evidence does not show that Defendant White personally delivered any nursing services to Plaintiff and that another

4

staff member, Gerald Deel, conducted an assessment and identified no serious injury. The Magistrate Judge noted that Plaintiff's claim against Defendant White appears to be based on supervisory liability, but the record does not contain evidence to support such a claim. (*Id*. at 24-28). Consequently, the Magistrate Judge recommended granting Defendant White's motion for summary judgment on the deliberate indifference claim.

The Magistrate Judge noted that much of Defendant's affidavit (Dkt. No. 75-1) was focused on his ultimate arrest on drug charges and claimed that Defendant Smith's actions should cause any evidence gathered to be excluded on the fruit of the poisonous tree doctrine.[3] The Magistrate Judge correctly noted that, under the *Younger* Abstention Doctrine,[4] federal courts should not interfere with ongoing state criminal proceedings and that Plaintiff could raise any arguments about improperly obtained evidence in his state criminal proceedings. Because any ruling by this Court on the lawfulness of Defendant Smith's actions would call into question the validity of the state criminal proceedings, the Magistrate Judge concluded that these claims should be barred under the *Younger* Abstention Doctrine. (*Id*. at 29-31). The Magistrate Judge further found that Defendants were entitled to qualified immunity because Plaintiff had failed to show that his constitutional rights were violated. (*Id*. at 28).

The Magistrate Judge additionally recommended that Plaintiff's motions for summary judgment (Dkt. Nos. 61 and 87) be denied. The Magistrate Judge found that Plaintiff's claims of serious injury from his arrest by Defendant Smith were not supported by the record and did not

---

[3] The so-called "fruit of the poisonous tree" doctrine is an exclusionary rule that excludes "evidence later discovered and found to be derivative of an illegality." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation omitted).
[4] *Younger v. Harris*, 401 US 37 (1971).

create a genuine dispute concerning any material fact. (*Id*. at 32-36). The Magistrate Judge also recommended the denial of Plaintiff's motion to amend the Complaint as untimely, futile, and prejudicial to Defendants. (*Id.* at 36-40).

## II.    Legal Standard

### A.  Magistrate's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R & R to which specific objections are made. *See* 28 U.S.C. § 636(b)(1). Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. Where the petitioner fails to timely file any specific objections, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citation and punctuation omitted).

### B.  Pro Se Pleadings

This Court liberally construes complaints filed by *pro se* litigants to allow the development of a potentially meritorious case. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a viable federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (citation omitted).

**III.    Discussion**

After a careful review of the R & R of the Magistrate Judge and the full record in this matter, the Court finds that the Magistrate Judge ably summarized the factual and legal issues in this case in a detailed 42-page R & R.  Accordingly, the Court finds that the Magistrate Judge correctly concluded that Defendants' motion for summary judgment should be granted and Plaintiff's motions for summary judgment and to amend the Complaint should be denied.

**IV.    Conclusion**

For the foregoing reasons, the R&R is **ADOPTED** as the Order of the Court (Dkt. No. 94). Defendants' motion for summary judgment is **GRANTED** (Dkt. No. 66) and Plaintiff's motions for summary judgment (Dkt. Nos. 61, 87) and to amend the Complaint (Dkt. No. 93) are **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

April 2, 2026
Charleston, South Carolina